## BROWN & BIGELOW v. LOUIS F. DOW CO.
### No. 8850.

Circuit Court of Appeals, Eighth Circuit.
Aug. 9, 1930.

Rehearing Denied Sept. 26, 1930.

Frank A. Whiteley, of Minneapolis, Minn. (Howard L. Fischer, of St. Paul, Minn., on the brief), for appellant.

H. S. Johnson, of St. Paul, Minn., for appellee.

Before KENYON, BOOTH, and GARDNER, Circuit Judges.

BOOTH, Circuit Judge.

This is a patent suit in the usual form, seeking an injunction and an accounting. The claims involved are 2, 3, 4, 5, and 6 of reissue Patent No. 16,253, issued to Fischer and Kristofek January 12, 1926. Claim 2 is the same as claim 2 of the original patent No. 1,375,579, April 19, 1921. Claims 3 to 6, inclusive, are claims added in reissue. The invention covered by the patent relates to that class of lead pencils sometimes known as automatic, wherein the lead of the pencil, which is held by a lead holder attached to a tube telescoping into another tube, may be pushed forward through the open conical tip of the outer tube, and may also be drawn back within the outer tube.

Claim 2 of the patent reads as follows: "2. In a pencil, a barrel comprising front and rear telescoping members, said rear·member having a smooth outer surface and a uniform cross section throughout the major part of its length, said front member being formed of thin-walled tubing having a smooth inner surface and adapted to· slide over the outer smooth surface of said rear member, a cross section of the rear end of said front member being of a greater diameter than the outer diameter of said rear member one way and of a less diameter than the outer diameter of said rear member the other way to cause said front member to engage the smooth outer surface of said rear· member under spring tension to hold said members together and lead holding means connected to the outer end of said rear member for holding the marking lead to project through the other member in writing position."

The important element of this claim is contained in the language, "a cross section of the rear end of said front member being of a greater diameter than the outer diameter of said rear member one way and of a less diameter than the outer diameter of said rear member the other way to cause said front member to engage the smooth outer surface of said rear member under spring tension to hold said members together." In other words, the vital characteristic is a distortion of the rear end of the outer tube so that, instead of being round, it becomes oval. This distortion results in friction when the inner tube is inserted into the outer one, and by this friction the two tubes are held slidably together.

Among the defenses set up in the answer were invalidity of the patent in view of the prior art and noninfringement.

The trial court held the patent valid but not infringed. Decree was entered for defendant (appellee).

The prior art, which was a crowded one, contained, among other patents, one to Harry L. Fischer, No. 1,340,331, May 18, 1920. This disclosed two thin telescoping tubes, the inner tube having a slit, and the walls of the slitted portion being turned outwardly to frictionally engage the inner surface of the outer tube.

The prior art also contained a patent to Sheaffer, No. 1,284,156, November 5, 1918. This disclosed a plurality of slits in the outer tube; the material being bent inwardly between the slits to form a springlike pressure against the inner tube.

There were other patents in the prior art, such as Mussinan, No. 862,579, August 6, 1907, and Fiske No. 272,948, February 27, 1883, which showed frictional contact be-

tween the two tubes by means of a distortion of one of them.

The file wrapper of the original patent shows that all of the claims were rejected at one time by the Patent Office in view of the prior art. Sheaffer, Mussinan, and Fiske were cited. In one of the letters written by the attorney for the patentee after said rejection, the following language occurs: "Applicant's claims, now presented, are limited to the precise construction illustrated and are believed to differentiate from the references of record, and as explained in the oral interview with the Examiner, the distorted portion of applicant's barrel is at one end of one of the members and does not extend longitudinally of the barrel, as is the case in the patent to Mussinan."

In a later letter, the following language occurs: "Owing to the fact that applicants have confined each and all of their claims to a specific construction, which is not illustrated by the references, a reconsideration, and allowance of the claims presented is requested."

And still later, after further changes had been made in the claims, the following statement was made: "This amendment is made to distinguish the claims of this application from patents showing slits to form springs to frictionally hold telescoped parts together. Applicant's pencil is formed with a distorted portion in the barrel, the distorted portion being undivided, this feature of applicant's invention is of primary importance and is thought to clearly and patentably differentiate from the references."

■■ In view of the prior art, and in view of the foregoing statements in the patent proceedings in regard to the patent in suit, it is plain that, in order to obtain approval of claim 2, a very narrow construction was placed thereon. The same narrow construction must follow the claim after the patent is allowed. Sargent v. Hall, etc., Co., 114 U. S. 63, 86, 5 S. Ct. 1021, 29 L. Ed. 67; Shepard v. Carrigan, 116 U. S. 593, 597, 6 S. Ct. 493, 29 L. Ed. 723; Morgan Envelope Co. v. Albany Paper Co., 152 U. S. 425, 429, 14 S. Ct. 627, 38 L. Ed. 500; Hubbell v. United States, 179 U. S. 77, 83, 21 S. Ct. 24, 45 L. Ed. 95; Weber Elec. Co. v. Freeman Elec. Co., 256 U. S. 668, 677, 41 S. Ct. 600, 65 L. Ed. 1162; D'Arcy Spring Co. v. Marshall, etc., Co. (C. C. A.) 259 F. 236. And, inasmuch as the claim must be narrowly construed, only a correspondingly narrow range of equivalents can be allowed. Moon-Hopkins Co. v. Dalton Co., 236 F. 936 (C. C. A. 8); J. E. Shaffer Co. v. Smith Sep. Co., 26 F.(2d) 66 (C. C.

A. 8); Electrol, Inc., v. Merrell & Co., 39 F.(2d) 873, 878 (C. C. A. 8), and cases cited.

The accused device of the defendant has two tubes telescoping into each other, and friction is secured between these two tubes by a slit in the inner tube, laterally of the tube, and another slit, joining the first one, longitudinally of the tube. The edges of the longitudinal slit are turned in, bending the material outwardly to form spring portions which press against the inner walls of the outer tube. It is quite apparent that the distortion is produced by following the teachings of the prior art rather than the teaching of the plaintiff's patent; and we think defendant's distortion is not included in the narrow range of equivalents allowable to plaintiff.

It is also claimed that defendant's accused device makes use of a support for the lead which is the same as the support disclosed in plaintiff's patent, or an equivalent. In plaintiff's device this lead is held by a finger, and the finger is fastened to a base which is attached to a small spring. This base, with its spring and finger, are attached to the inner end of the inner telescoping tube. Reference was made in the claims of the original patent, No. 1,375,579, to this support for the lead in the following words: "* * * A lead holding means resiliently connected to the inner end of the rear member for holding a marking lead" (claim 1); "* * * and lead holding means connected to the inner end of said rear member for holding the marking lead" (claim 2).

April 6, 1921, an application was filed for a patent on a pencil somewhat similar to the pencil of plaintiff's patent. The application resulted in a patent known as the O'Brien and Vierling patent, No. 1,447,397, March 6, 1923. The application for plaintiff's original patent was filed September 7, 1918, and the patent issued April 19, 1921. In March, 1923, shortly after the issue of the O'Brien and Vierling patent, an application was filed by plaintiff's assignors for surrender of patent No. 1,375,579, and for a reissue; and an interference was requested with the O'Brien and Vierling patent on the ground that applicants were entitled to the claims of that patent. In an affidavit accompanying the application for reissue, Fischer and Kristofek say, in reference to the original patent, "the specification is insufficient in that the claims do not sufficiently protect the invention in failing to fully point out and distinctly claim the improvement and combination, which comprises an essential feature of the invention disclosed in said letters patent"; and,

with reference to their invention, they say it "comprises a pencil shown with two telescoping members, one of which is provided with lead holding means comprising washer-like end members positioned in said member so that the member carrying the lead holding socket for the marking lead of the pencil is free to adjust itself or wobble sufficiently to align the lead carried in the socket with the bore of the telescoping member formed with the writing end of the pencil so that the marking lead will pass freely through the same"; and, finally, they say, "affiants believe that the selfsame structure as set forth in their patent drawings and specification has been claimed by Elizabeth O'Brien et al in their application to such an extent that unless affiants can reissue their patent and secure interference with the patent of Elizabeth O'Brien et al, No. 1,447,397, that affiants would be needlessly limited and restricted so that said letters patent would be inoperative to give the protection to which said invention is entitled."

The asked-for proceeding was had. Claims 1, 2, 3, and 5 of the O'Brien and Vierling patent were put in interference. The "wobble" movement of the lead-holding stem which the petitioners for reissue had mentioned in their affidavit was specifically mentioned in the claims put in interference. The "wobble" movement device as disclosed by the O'Brien and Vierling patent was the very thing sought to be covered by the petitioners in the reissue of the original patent, No. 1,375,579.

They were defeated in this interference proceeding. The Law Examiner, in dissolving the interference, said: "The obvious purpose of the changes in terminology in the Fischer and Kristofek reissue application is to provide for claims 1, 2, 3 and 5 of the O'Brien and Vierling patent in this interference. While mere changes in terminology may not be objectionable in a reissue application, when such changes go to the substance of the invention and modify it in material respects either as to form or relationship of its elements or as to its principle of operation, then they are objectionable as involving new matter."

And again: "Neither the drawing nor the specification of the Fischer and Kristofek patent suggests any 'wobble movement' of the lead holder, with its attendant advantages. This idea is absolutely foreign to their disclosure. In fact, their disclosures exclude any such function or mode of operation."

On appeal from the Law Examiner, the Board of Examiners in Chief, in affirming the decision of the Law Examiner, said: "We find, therefore, that Fischer and Kristofek are not entitled to reissue their patent with the counts of this interference for the general reason that these counts are for an invention which is separate and distinct from the invention which was claimed and was attempted to be claimed in their original application. The invention of the present issue is not the same invention as that originally claimed by appellants, and therefore a reissue with the counts should not be allowed for that reason. More specifically, the counts of the issue call for structures which were not disclosed by Fischer and Kristofek, and therefore they are for new matter in their reissue application. On the ground of new matter, therefore, the decision of the law examiner will be affirmed."

An appeal from the Board of Examiners in Chief resulted in an affirmance by the Assistant Commissioner of Patents, and a rehearing was denied.

That these conclusions reached in the Patent Office were correct we think cannot be doubted. Huber v. Nelson Mfg. Co., 148 U. S. 270, 13 S. Ct. 603, 37 L. Ed. 447; Worden v. Searls, 121 U. S. 14, 7 S. Ct. 814, 30 L. Ed. 853; Coon v. Wilson, 113 U. S. 268, 5 S. Ct. 537, 28 L. Ed. 963; Mahn v. Harwood, 112 U. S. 354, 5 S. Ct. 174, 28 L. Ed. 665; Clements v. Odorless, etc., Co., 109 U. S. 641, 3 S. Ct. 525, 27 L. Ed. 1060; Miller v. Brass Co., 104 U. S. 350, 26 L. Ed. 783; Wichita, etc., Co. v. Clear Vision Pump Co., 19 F.(2d) 435 (C. C. A. 8); American, etc., Co. v. Porter (C. C. A.) 232 F. 456; Freeman v. Asmus, 145 U. S. 226, 12 S. Ct. 939, 36 L. Ed. 685; Ide v. Trorlicht, etc., Co., 115 F. 137 (C. C. A. 8); Featherstone v. Bidwell Co. (C. C. A.) 57 F. 631.

After the foregoing strenuous and repeated, though unsuccessful efforts to make the claims 1, 2, 3, and 5 of the O'Brien and Vierling patent in their reissue application, the applicants for the reissue patent, through their attorneys, made the following statement: " * * * Applicant would respectfully suggest that under the peculiar circumstances of this case, he is entitled to liberal treatment. He is confronted with the outstanding patent which was recently involved in interference containing matter which undoubtedly was in conflict with his original application, and by reason of his earlier filing date, if an interference had been originally declared with his original application, he would in all probability have prevailed on

the merits. As it happens, the patent having issued, without the suggestion of conflicting claims, the Office has ruled in the interference declared with the reissue application that the interference claims are for subjects-matter differing from the wording of the original patented claims. Because of this unfortunate condition, applicant *is drawing the present claims in keeping with the subject-matter of his originally patented claims, so that there can be no question but that these claims are drawn to the same invention as the original claims.*" (Italics ours.)

Claims 3, 4, 5, and 6 of the reissue patent were accordingly drawn and allowed. They were necessarily subject to three limitations: (1) They were confined to the same invention as the claims of the original patent, No. 1,375,579; (2) though they stated that the lead-holding means was movably connected with the inner end of the inner tube, they were of course limited by the prior art, and it is to be noted that, in the prior art, Manuel, No. 1,275,957, and Werner, No. 1,041,926, both had movable supports for their lead holders; (3) they were limited by the disclosure of the O'Brien and Vierling patent in view of the interference proceedings. The claims of the reissue patent, being thus limited, are of a very narrow scope—so narrow that they do not cover the device of defendant, which is simply a modification of the device disclosed in the O'Brien and Vierling patent.

Whether the O'Brien and Vierling patent is valid we are not called upon to determine. It is sufficient for present purposes to hold as we do, that defendant's device does not infringe any of the elements 2, 3, 4, 5, and 6 of plaintiff's patent.

Decree affirmed.