## TURNER et ux. v. GOLDSTEIN.
### No. 3216.

Circuit Court of Appeals, Tenth Circuit.
March 27, 1946.

Rehearing Denied April 18, 1946.

William B. King, of Denver, Colo., for appellants.

Carle Whitehead, of Denver, Colo. (Isaac Mellman, of Denver, Colo., on the brief), for appellee.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

Goldstein brought this suit against the Turners for the alleged infringement of Claims 1 and 2 of Patent No. 2,252,971. The patent was applied for March 28, 1941, and was issued August 19, 1941.

The patent is for a miniature saddle. The specifications state that the object of the invention is to produce a saddle top formed from a single piece of leather constructed in such a way that the usual saddle tree can be dispensed with, and in such a manner that the saddle top will retain its shape indefinitely.[1]

Goldstein withdrew the charge of infringement of Claim 2, leaving only Claim 1 in suit. That claim, as originally filed, read as follows:

"A preformed top for miniature saddles, comprising a single piece of leather curved transversely to form an upwardly convex seat, a portion of the material being curved

---

[1] The specifications further state:

"In order to manufacture this miniature saddle at a reasonable price, it is necessary to reduce the cost, and one way of doing this is to eliminate as much sewing and cutting as possible, which, in the present case is effected by means of this invention in which the saddle top is formed from a single piece of leather. * * *

"The saddle top is provided with a swell fork and a cantle, both of which are formed * * * by means of suitable dies which press the material outwardly into the desired shape. * * *

"Since the swell fork is formed by pressing upwardly a portion of the oak tanned leather forming the saddle top, the lower surface will be transversely concave and this is also true of the cantle. * * * For the purpose of reenforcing the walls of the swell fork and cantle and to assure that they will retain their shape indefinitely, in spite of rough usage, the depression in the inner surface which extends upwardly into the cantle, is filled with a cementitious material which is applied in plastic state and allowed to harden in place. * * * The swell fork is provided with a horn made from metal and this has a stem that extends through an opening in a swell fork and terminates in the depression in the concave under surface thereof. In order to secure the horn rigidly in place, the stem projects into a hole in a wooden block and the latter is embedded in a hardened cementitious material like that employed in connection with the cantle."

upwardly to form a transversely extending swell fork whose under surface is concave, a portion of the material at the other end of the seat being curved upwardly to form a transversely extending cantle, the under side of the cantle being concave, the top having a portion extending rearwardly beyond the cantle."

It was rejected on the ground there was no invention in forming a saddle top, comprising a fork seat and cantle, from a single piece of leather. It was amended by striking the clause "the top having a portion extending rearwardly beyond the cantle" and adding in lieu thereof "and self-hardening cementitious material in the depressions in the concave under the surfaces of the swell fork and the cantle, said cementitious material serving as means for retaining the shapes of the swell fork and the cantle." The patent was then granted for Claims 1 and 2.

At a pretrial conference, the issuance and validity of the patent were admitted; and it was stipulated that it was old in the art of full-size saddle making prior to 1941:

To provide a single piece of leather, including (a) the front face of the cantle, (b) the seat, and (c) a portion of the rear face of the fork or swell of the saddle; to cut such piece to the desired edge contour, to wet such piece and to form it, while wet on the saddle tree, into such portions of the saddle top;

To construct that portion of a saddle top which constitutes the covering of the swell fork, from a single piece of leather, precut to the desired edge contour, wet and then formed on the fork or slope facing the saddle tree, and to bring into contact with each other certain of the edge portions and secure them together by lacing, stitching, tacking, or gluing;

To cover the meeting edges by a strip of leather, and to secure such covering strip to the underlying piece of leather by stitching, lacing, tacking, or gluing;

To utilize a single piece of leather to form the front face of the cantle seat and a portion of the rear face of the fork or swell;

To utilize a plurality of pieces of leather to form a complete saddle top, the same being cut and contoured to shape while wet on the saddle tree, and to join certain of the edges together, and to secure the meeting edges together by lacing, stitching, tacking, or gluing;

To cover the rear face of the cantle with a separate piece of wet leather and bring it into marginal alignment with the upper margin of the cantle-front covering leather and secure it thereto by gluing, stitching, or lacing; and

To cover the meeting and engaging edges of shaped and assembled leather pieces with finish strips stitched, laced, or glued to secure them in place.

It was further stipulated that the prior art did not disclose the forming of a saddle top from a single piece of leather, including a seat portion, a swell fork front face, and a swell fork rear face; forming the saddle top separate from, and prior to its association with, the parts of the completed saddle other than such top; and forming a saddle top, otherwise than upon a saddle tree or frame.

The advance over the prior art, if any, therefore, lies in the construction of a saddle top, comprising a seat portion, a complete swell fork, and a complete cantle, from a single piece of leather, the elimination of the saddle tree, and the filling of the inside of the swell fork and cantle with cementitious material to maintain their shape.

From an interlocutory decree enjoining infringement of Claim 1 and directing an accounting, the Turners have appealed.

The trial court, solely on the basis of the admission at the pretrial conference, held the patent valid "for the purposes of this suit only, and not against the whole world." It did not otherwise inquire into or determine the validity of the patent.

The rights of the general public are adversely affected by the issuance of an invalid patent. The free use of the patent is suspended while it is in force and the power to grant a later patent to a different and more meritorious inventor is impaired.

■ It is the duty of the court to dismiss a patent infringement suit, where the invalidity of the patent affirmatively appears, although that defense is not set up in the answer nor urged by the defendant.[2]

[2] Slawson v. Grand Street, P. P. & F. R. Co., 107 U.S. 649, 652, 2 S.Ct. 663, 27 L. Ed. 576; Jones v. Cyphers, 2 Cir., 126 F. 753, 754, 755; Richards v. Chase Elevator Co., 158 U.S. 299, 301, 15 S.Ct. 831, 39 L. Ed. 991; Dunbar v. Myers, 94 U.S. 187,

We think it clear, in view of the prior art, that there was no invention in forming a saddle top, comprising a swell fork, seat, and cantle, from a single piece of leather. The Patent Office so held and the applicant acquiesced in that holding and amended the claim. The question then arises whether the addition of the element added to the claim, by amendment, of filling the inside of the swell fork and the cantle with cementitious material to serve as a means for retaining their shape, and the elimination of the saddle tree, amounted to invention.

In order to constitute invention, the conception of the patent must be the result of the exercise of the inventive or creative faculty, not of mere mechanical skill. That which would readily occur to one acquainted with the prior art and skilled in that art, involves mere mechanical skill.[3]

We are of the opinion that the forming of the saddle top from a single piece of leather and the substitution, in a miniature saddle, of cementitious material for the saddle tree to maintain the shape of the swell fork and cantle, in view of the disclosures in the prior art, was the exercise of mere mechanical skill and did not rise to the dignity of invention.

We conclude, therefore, that Claim 1 of the patent was invalid for want of invention.

If, however, we are mistaken in that conclusion, we are of the opinion there was no infringement. Claim 1, if valid, constituted a very slight advance in the art of saddle making.

The alleged infringing device is constructed of five pieces of leather. The largest piece forms the front face of the cantle, the seat, and the swell fork, except the sides of the swell fork. Such piece of leather is cut and formed so that there are open edges on both sides of the swell fork, which edges are brought together and covered with strips of leather attached with glue. The rear of the cantle is constructed from another piece of leather, the upper edge of which conforms to the edge of the front face of the cantle, and those two edges are joined together with glue and covered by another piece of leather formed over them and attached with glue. In the alleged infringing device the inside of the swell fork and cantle is not filled with cementitious material, other than that glue is employed to attach the strips of leather used to cover the edges at the sides of the swell fork, to join the conforming edges of the front and rear face of the cantle, and to attach the strip covering such conforming edges, and to attach the metal fork in the top and center of the swell fork. Cementitious material is not employed to retain the shape of the swell fork and cantle.

The range of equivalents depends upon, and varies with, the degree of invention.[4] It is proportioned in each case to the character of the advance or invention evidenced by the patent under consideration.[5] A patent which marks only a slight improvement over the prior art will be accorded only a narrow range of equivalents.[6]

Since the patent in suit marked only a slight, if any, patentable advance

---

24 L.Ed. 34; Brown v. Piper, 91 U.S. 37, 44, 23 L.Ed. 200; Charles Boldt Co. v. Nivison-Weiskopf Co., 6 Cir., 194 F. 871, 873; Wills v. Scranton Cold Storage & Warehouse Co., 3 Cir., 153 F. 181, 184; West v. Rae, C.C.Ill., 33 F. 45, 47; Nicodemus v. Frazier, C.C.Md., 19 F. 260, 262; Western States Machine Co. v. Ferguson, D.C.R.I., 47 F.2d 775; Hills v. Federal Optical Co., D.C.Mass., 295 F. 213, 217.

Cf. Hill v. Wooster, 132 U.S. 693, 698, 10 S.Ct. 228, 33 L.Ed. 502; Allbright-Nell Co. v. Autosteam Process Co., 7 Cir., 70 F.2d 959, 961.

[3] Callison v. Dean, 10 Cir., 70 F.2d 55, 58.

[4] Mason Corporation v. Halliburton, 10 Cir., 118 F.2d 729, 731.

[5] Johns-Manville Corp. v. National Tank Seal Co., 10 Cir., 49 F.2d 142, 145; Skinner Bros. Belting Co. v. Oil Well Improvements Co., 10 Cir., 54 F.2d 896, 899, 900.

[6] Haynes Stellite Co. v. Osage Metal Co., Inc., 10 Cir., 110 F.2d 11, 12; Magnavox Co. v. Hart & Reno, 9 Cir., 73 F.2d 433, 435; Thomas Day Co. v. Doble Laboratories, 9 Cir., 42 F.2d 6, 8; Brown & Bigelow v. Louis F. Dow Co., 8 Cir., 42 F.2d 785, 786; Knick v. Bowes "Seal Fast" Corp., 8 Cir., 25 F.2d 442, 446; Electrol, Inc., of Missouri v. Merrell & Co., Inc., 8 Cir., 39 F.2d 873, 878; Smith v. Mid-Continent Inv. Co., 8 Cir., 106 F.2d 622, 624.

over the prior art, it should be accorded only a narrow range of equivalents.

Here, the Turners did not employ the principle of the patent, but followed the teachings of the prior art. Instead of forming the seat, swell fork, and cantle from a single piece of leather, they employed five pieces of leather. The employment of a plurality of pieces of leather makes it necessary to join such edges together to form a complete saddle top, obviated by the use of a single piece of leather in the patent in suit. The Turners joined such edges together by the use of glue, a practice well known in the prior art. It is true they do not employ a saddle tree, but they do not fill the inside of the swell fork and cantle with cementitious material, except to the extent that that results slightly and incidentally from the joining of the edges together with glue, and the fastening of the metal horn in the swell fork, practices well known in the prior art and not within any advance over the prior art in the patent in suit.

In view of the narrow advance, if any, of the patent over the prior art, the narrow range of equivalents which must be accorded it, and the fact that the alleged infringing device follows the teachings of the prior art, rather than the patent in suit, we are of the opinion that it does not infringe.

The judgment is Reversed and the cause is Remanded, with instructions to dismiss the action.